May 3, 2014, the Director of California's Department of Managed Health Care forced the state law to take away that the First Amendment is not a law. She required churches to fund elective abortions through their full health care plan, even though the law she is applying allows for exemptions from the cause or upend the public interest, and even though the Department's own legal analysis counts as against applying the cover-up to religious employers like the churches here. Such an unnecessary and unprecedented infringement of religious beliefs warrants strict scrutiny. That's because a law that is subject to radical exceptions is the antithesis of a neutral and generally acceptable policy. In the Supreme Court, it made clear that if typical exemptions from the law are available, the government may not refuse to cases of religious hardship without compelling reason. Yet the Director here does not even argue, let alone prove, that her actions further a compelling governmental interest. Let me ask you a question regarding the allegation in the complaint. It's not clear to me that pre-2014, the letters being issued, that the churches have a plan that is specifically faith compliant. Can you direct me to the portion of the complaint that you're relying on for those allegations, or is your position that you don't need to have those sort of allegations? Well, Your Honor, the allegations can be found at paragraph 30 of the Second Amendment complaint. This is at excerpts of record page 57, where it says that the churches consulted with their brokers and health insurers about getting a plan that accommodated the religious. In all candor, their attempt to do so was kind of split. Foothill Church had a plan, was in the process of negotiating a plan when the department issued its letters. But the allegation is at paragraph 52 of the Second Amendment complaint, that it was the mandate that prevented those churches from obtaining a plan. I think Judge Wynn asked a slightly different question. At least if she didn't, it's the one I was interested in. Before the letters were issued in 2014, what kind of plan did the church have? Well, so Foothill Church was in the process of negotiating a plan that excluded abortion coverage. Okay, did it have any plan at all? No. But did it have a plan before the letters were issued? Yes, it did. And did that plan cover elective abortions? It was unclear. And so in negotiations with the insurance company, they were making that exclusion clear. Okay, so that's what I want to drill down on. Okay. From my reading of the allegations in the Second Amendment complaint, they were very vague. So with the clarification today, am I correct in understanding that none of the plaintiff churches had a plan that is consistent with their beliefs? So at best, Foothill was in the process of negotiating for such a plan. Is that a fair statement? It's fair with respect to Foothill. With respect to the other two churches, I would say that they were under the impression that they had plans that were consistent with their religious beliefs. Now, what happened with the department issuing the August 2014 letter is they required that plan language to be changed. And so it was unclear. But I think what this court is getting at is the question of injury and the allegation at paragraphs 50 to 52 of the Second Amendment complaint, which is found in excerpts of Record 60, is that the mandate prevented the churches from obtaining a plan that was consistent with their religious beliefs. That's sufficient to allege injury that was caused by the director. And as this as this court, the Skyline panel addressed this issue, we found that those types of allegations are sufficient. Article three. Mr. Gallus, let me ask you a question on a slightly different point, because I want to understand your argument. Let's assume that the California statute and regs provided for no exemption whatsoever. From the requirement that plans cover cover medical medically reasonable services and that the California courts had held that elective abortions were medically reasonable services. So no exemptions given to anyone. Would you then have a complaint? I think so. The argument related to neutrality in general applicability, of course, would be be weakened. But we do have the argument that this infringes on the church's internal affairs and autonomy. And so the court would have to turn to that argument. But of course, that's that's not what we have here. We do understand. So that's because I want to turn from that to what the exemptions if there was an exemption that said. Any church whose religious beliefs would be offended by a requirement that elective abortions were covered is entitled to an exemption from that requirement. You'd be fine, would you not? Yes, your honor. We would be. The only caveat I would add to that is that they enforce this coverage requirement immediately. And so they can't. OK, but that's I'm just trying to think. Let's assume that it it just said that. And that's what they follow the reg. If you wanted an exemption from coverage for abortion and you were a church, all you had to do was say, I want one and they would give it to you. The statute would then be constitutional in your view, would it not? Yes, your honor. We want to be here. OK, so when you ask that we find the statute unconstitutional, what you're really saying is that you're asking that we find its application to your clients unconstitutional. Is that correct? Yes, your honor. That's correct. It's the enforcement and application of that coverage requirement to the church's health care plan. You're not making it that the state can't impose these requirements in general, but only in specific on your client. Yes, that's correct. Your honor. We're seeking. Thank you. Yeah, I would like to talk more about the individualized exemptions, but I want to be sensitive to the courts. A recent order related to whether it should defer submission of the case pending the Supreme Court's ruling in Fulton. And if I may just address that briefly, we certainly understand the desire perhaps to take a wait and see approach to the Supreme Court's ruling in that case. But we do think there's a few considerations that do counsel against deferring submission. The first is the procedural posture of this case. We're just at a motion to dismiss stage. So a ruling in favor of the churches here would just allow things to proceed. It's not a determinative final judgment on the merits. So the parties would be free at a subsequent stage to address the Supreme Court's ruling in Fulton. Let me ask you a question about that before you go on, because unlike Skyline, where the district court had thrown out the complaint for. On redress ability grounds or on preliminary grounds here, the district court actually addressed the merits of your claim and said, no, they're barred under the Smith doctrine. So I'm not sure why this would move the litigation along if we sent it back and said, well, we're not sure the Smith doctrine has survived district court, but move the litigation along in the meantime. I mean, what is it? Isn't everybody best served by waiting to see whether Smith is still the law? Well, of course, this this court would need to address the merits of the claim. And that goes to my point about that. We believe that the free exercise claim here is straightforward. And under the existing law, it states a claim under the free exercise. And this really we can turn to the individualized exemptions. This is a well-established principle that goes back to the Supreme Court decision in Sherbert v. Boehner. It's reiterated in the plurality opinion in Boehner v. Roy. It's present in the Smith and the Coomey decision. And that is when there's a system of individual exemptions available when it exists. The government cannot withhold an exemption to cases of religious hardship unless it satisfies strict scrutiny, unless it has a compelling reason for doing so. And when you look at the law that's being applied here, and that's the Knox Keene Act, basic health care services provision, it contains such a system of individualized exemptions. Have we ever have we ever applied that doctrine? And I'm not saying it's limited to the employment context. I'm just asking whether that we've ever applied the individualized exemption doctrine outside the employment context. The Ninth Circuit has applied the doctrine as far as the analysis, I should say, in the Sormans case. Of course, it found that in that case, the discretion that was given to the agency there was not unfettered like it is here. So it determined that the exception didn't apply. But in Sormans, it applied the analysis. And, of course, the Supreme Court in the Coumey addressed the individualized assessments and individualized exemption in that case. And that case didn't involve unemployment compensation. That had to do with a challenge to the city, city of Hialeah. Didn't each of those cases say something like even assuming it applies in this context? You haven't satisfied it. In other words, would we be making new law? I'm not saying we shouldn't, but we will be making new law by saying it applies outside the employment context. I don't think so, Your Honor. In the Coumey, of course, the Supreme Court ruled in favor of the religious claimants. So in Sormans, this court did not. But what the court said in Sormans, the reason it didn't say the exception applied, is because that the discretion there afforded minimal exemption authority to the agency. And that that discretion was tied specifically to enumerated exemptions that this court determined actually furthered and supported the government's interest. Here, the discretion is unfettered. Is there any indication, Counsel, that the director is exercising that discretion in a manner that disfavors religious beliefs? Yes. Yes, Your Honor. The director has exercised discretionary exemption authority in two ways. It's provided categorical exemptions from the act's requirements. That's a Title 28 of the California Code of Regulations. In a manner that disfavors religious beliefs as compared to secular interests? Well, the fact that the director is not exercising that authority here demonstrates that there are secular interests being favored over religious. And of course, we have the October 2015 accommodation that the director made for a single plan filing that allowed abortion coverage to be limited, except in the case of rape and incest, to save the life of the mother. And that was according to the director's discretionary exemption authority. Has any of the churches in this case attempted to go through the exemption process? Yes, Your Honor. The churches have made a specific request to the department for an exemption. Paragraph 7 of the second amended complaint says that the department has alleged that the department has rejected and refused that accommodation. That's sufficient at a motion to dismiss page. And the department can hardly get up here and say that it hasn't had the opportunity to review plan filing that accommodated the churches religiously. That's precisely what they were doing in leading up to the issuance of the August 2014 letters. Actually, I don't read the 2014 letters that way. I think the 2014 letters say we've concluded that under state law, the standard plan must include abortion coverage. And therefore, to the extent we've told you in the past that the standard plan didn't need to, we were wrong. And then in 2015, the department says in response to I take it must be a specific request from someone. OK, you religious organizations would like a plan that only that that's limited to rape, incest and life of the mother. So that's fine with us. I'm trying to figure out the answer to Judge Wynn's question. Did any of your clients. I'm not saying they have to. Skyline suggests they don't have to. I'm just trying to find as a matter of fact. Did any of your clients or plan on their behest ever go to the director and say, would you issue us an exemption that totally excludes abortion from the coverage in the policies? Yes, your honor. The church has made that specific request to the director via formal letter. If I if I may reserve the remainder of my time. Actually, I have one more question and then we'll I'll add some time for rebuttal because I want to make sure that all the judges have an opportunity to have their questions answered in this particular case as well. You going back to what you said previously that procedurally, because this is an emotion to dismiss stage that counsels against waiting for the Supreme Court to render a decision. If we send it back, what sort of discovery you anticipate that would help either party at the summary judgment stage? What's missing that you're going to develop through the discovery process? Your honor, it'd be a matter of proving the allegations in our complaint. And so, of course, we think what the allegations of the complaint that are set forth, those are sufficient as a matter of a lot of state of free exercise under existing law. We don't anticipate the existing law to be changed in such a way that it would undermine those claims. So it would be a matter of going through discovery and proving up what we alleged. And I think we certainly understand this court's desire to wait. Our position is simply that this is an ongoing injury. It's a constitutional injury that's been going on now for six years. And each day that passes is another day that the churches are required to provide coverage for something that violates a sincerely held religious. And the Supreme Court now Rodney Burns. And I know this court has said similar things. Is that even a momentary loss of First Amendment freedoms? So we understand this court's desire to wait. We would certainly expect that the Supreme Court's decisions in there will only strengthen the church's arguments. Judge Brest, Judge Hurwitz, do you have any additional questions? I don't. Not at the moment. Thank you. All right. I'll put four minutes back on the clock for rebuttal. Thank you, Your Honor. Ms. Eisenberg, let's wait for the clock to reset. Here we go. All right. When you're ready. Thank you. Good afternoon. May it please the court. Carly Eisenberg on behalf of the director of the California Department of Managed Health Care. Your Honor is under California law. Licensed health plans must provide basic health care services. And as the California Court of Appeal recently confirmed, those services include lawful abortions. When the director realized that she inadvertently approved plans that did not comply with California state law. She reminded those non-compliant plans of their obligation to comply with pre-existing state law. This court should affirm the district court's decision with respect to the free exercise claim for two primary reasons. First, the director's enforcement of state law was neutral towards religion. And plaintiff's allegations are insufficient to override the non-discriminatory reasons identified by the director for her actions. Second, the director's enforcement of state law was generally applicable. And indeed, the only time the director has exercised her exemption authority was to grant the only exemption request that she has received, which is to accommodate religious employers. Can I ask you about Judge Press? I'm sorry. You wanted to go? Sure. If that's okay, Judge Hurwitz. I was going to ask Ms. Eisenberg. Employment Division versus Smith and the CUME both talk about when you have systems with individualized exemption powers. Here, the director has these exemption powers through the good cause and public interest and other subsections that have been quoted to us. So why doesn't this fall within the individualized exemption portion of Smith and be subject to strict scrutiny? Your Honor, two points on that. First is a factual point, and that's that plaintiff has not alleged at any point that the director has utilized her authority to burden religious but not secular opposition to abortion coverage. And that individualized exemption authority, this brings me to my second point, is grounded in those cases in which there's been a denial in the exercise of that authority. So in Sherbert and Thomas, there were both denials of unemployment benefits. Even in the cases cited by plaintiffs on appeal, Blackhawk Ward, Fraternal Order, they're all denials of requests. And so it's the government conduct that's being challenged is the use of the individualized exception. But hasn't the state made clear that it has no desire to confer that individualized exemption on these plaintiffs through these various letters and through just the fact of this extensive defense and litigation? No, Your Honor. I think even the Skyline case confirms that the director, since 2014, has always said that she's willing to consider all exemption requests that will be put before her that come from a plan over which she has license and regulatory authority. Plaintiffs on appeal suggest that they themselves were denied an exemption request, but the Skyline case also makes clear that the director's regulatory authority is only over licensed health plans. She has no authority over employers such as plaintiffs. That's what I wanted to ask you about. The Skyline case seems to make clear that they don't have to go get a plan to make a request to you before they come to court. The panel expressly rejected that notion. It said, you know, we find prudential ripeness despite the fact that it's possible that a plan might come to you. So I'm just trying to figure out in this case what your position is. Do you think the director has the legal power to give them the relief they seek? No, Your Honor. Well, if a plan came to the sorry, if a plan came to you and said, I would like to draw up a plan for the Foothills Church, Foothill Church, and I would like to exclude abortion from it. Could the director say you may do that? Yes, Your Honor, because her authority extends over the 78 licensed health plans. OK, so your your your problem, I take it, is that it doesn't matter how many times the church comes to you. You need a plan to come to you. Is that what you're saying? Correct, because that's the scope. Well, I know I know that's your position, but doesn't Skyline reject that position? Skyline says they presented a justiciable case. We don't have to wait for a plan to come to you. Judge Hurwitz, I agree that for purposes of standing and in the standing analysis, the court in looking at redress ability explained that the church did there did not have to wait for a plan because the it was reasonably foreseeable that relief could be granted that would satisfy the church's beliefs, therefore satisfying redress ability. It's a very different question, however, as to whether as a legal matter under the Knox Keene Act, the director indeed has that regulatory authority over employers. And for the same reason, the standing analysis doesn't track exactly on top of the free exercise analysis when it comes to the individualized exemptions. Well, see, now I'm having some difficulty figuring out why we're here. You say if only a plan came to us, we'd grant the exemption. They say, you know, we've asked for the exemption. Surely they have a plan. They say they were in negotiation with a plan to get the exemption. Why don't we put this case in mediation and let them get a plan to ask for the exemption? And then you're granted what I'm trying to figure out what we're actually fighting about here. Is it that they can't persuade a plan to ask for the exemption? Is that your problem? Your Honor, it has been six years since the letters were issued. There's 78 licensed health plans and not a single one has come forward. Some of them came forward in 2015, correct? One came forward and asked for an exemption request for religious employers, and that was in fact granted. According to Plaintiff's own complaint, it's the only exemption request that's ever been put forward in front of the director. So your procedural problem is it's not enough for them to ask you under your view of the law. A plan must ask you. Yes, because the director. I understand your position. So now let me go back to their legal claim. They say it violates our religious beliefs to be forced to have a plan that covers abortion. And we shouldn't have to. In order. This is a state imposed requirement. The only way we can get out of that requirement is to persuade a plan to ask you for that. And we can't find a plan. Let's assume they said that. Wouldn't they then have a real claim? I mean, is that there's that exercise of their religious beliefs have to be dependent on them finding a plan that agrees with them? The free exercise individualized exemption exception that's outlined in Smith turns on whether or not the government has withheld an exemption request that's been put forward. In every case that has that underlies that premise, the government withheld a request for an exemption. In this case, there's no allegation that the director has withheld any type of request. It's a very difficult argument to accept when when it seems like the director has made clear through various letters what her position is in the fact that this lawsuit has progressed as long as it has. I guess this is sort of Judge Hurwitz's point. If this was all so easy, wouldn't this have just been taken care of some time ago? Your Honor, respectfully, I don't. There's nothing in the law that mandates that the director can tell one of the 78 plans that they have to provide the product to that plaintiff is requesting. Rather, the plan has to make that exemption request. And we know I agree. I agree with you. And this may be why the individualized exemption stuff may or may not be relevant. I have a more central point. The state of California requires these people to have a health care plan. The health care plan that they're required to have covers abortion. They say that violates our religious beliefs. And you're saying, well, we shouldn't take that up because they could always ask you for an exemption. And their answer is we can't ask for an exemption. Somebody else has to ask them for an exemption, a plan. And so I'm trying to figure out what it is they're supposed to do if they can't persuade a plan to ask you for an exemption. Your Honor, I think with regard to standing that we understand that the skyline case is now law of the circuit. And it has addressed your honor's precise question with regard to redress ability. No, I think Judge Hurwitz is and I don't want to speak for him. He's going to the merits question. Thank you, Judge. I take it that your your issue is all right. As to the merits, in order to trigger strict scrutiny, there has to be a showing by the plaintiffs that the rector exercise her discretion in a way that disfavors religion. Right. Is that my understanding your position correctly? And so then that gets to the factual question of what what the regulations really require. I know there's no such allegation in this case, but if there had been an allegation that the plaintiffs tried but failed to persuade any plan to go through the process to seek an exemption. What would the state's response be at that point? Your Honor, there's unless the challenge is a one to the Knox King Act itself. The director's jurisdiction only goes so far as the California legislature has allowed. And I would just point out that in the skyline case, the department filed a petition for rehearing specifically on this issue to clean up the opinion to ensure that it made clear that the director's authority was only with regard to health plans and not employers. And the skyline opinion was amended to reflect that fact. So exactly as what the department's argument is today is reflected. I understand that the director can only act if a plan comes to the director. But does that put the plaintiffs as a practical matter result wise between a rock and a hard place? Because they basically want exemption, but they can't persuade the insurance company to go to the state. I think that that argument then becomes that the mere existence of the statutory scheme that he can grant exemption authorities triggers strict scrutiny and not a single case, including the Stormont case specifically said that that mere existence of the statutory exemption authority. That's true. That's true. Mere existence. I can agree with that. But the content of the exception here is discretionary. It's as good cause. It's public interest uses language. In some cases, exact language from Smith referenced as creating a system of individualized discretion that would then require a showing by the state. Right. And I think that even plaintiffs said today during oral argument that that is grounded in the Smith decision that the exemption request has been withheld. And here there's no allegation that there has been an exemption request that's been withheld when no health plan has sought the exemption request that would satisfy. So are you saying that they've named the wrong party? See, I'm going back to the point that Judge Wynn and I were trying to explore with you. They say, gee, we're being forced by the state to buy insurance that violates our religious beliefs. And that's the state scheme says you have to cover basic health services. And this state court of appeal says that includes abortions. And therefore, we're we're our constitutional rights are being violated. And maybe they didn't sue the right person. Maybe they didn't. Maybe they should have sued the governor of the state. But is that really what you're saying that I'm the director and I can't help them unless a plan comes to me and ask for an exemption? Your Honor, as frustrating as that is, I think that's what the state of the Knox Keene Act says that. And if there's any question about what the state what the state of the law is in terms of her, her authority, perhaps that question can be certified. Well, what the Knox is, as I read it. So tell me where I'm wrong. The Knox Keene Act requires that these be that basic services, to use that phrase, I'm sure it's a shorthand, be covered by health care plans. And the and we now know because the court of appeal has told us that that includes abortion services. But your client can exempt plans from that requirement. Correct. She can exempt licensed health plans. Correct. Right. Plans. And she has done so in the past. She has 2015 with the one and only exemption request she has received. Right. OK. And these guys would like to be exempted, too. But what you're saying is if they can only persuade a plan to ask us, we might exempt them also. Is that what you're saying? Yes, I think that would be a very different case, but it's not the one before the court. I understand. I understand. I'm just trying to figure out the procedural posture of why we're here. I know I want to get back to the other side, ask them whether or not they've ever asked a plan to ask you for an exemption. But what you're saying is the state's position is that if they ask, if a plan asked us for the exemption that Foothill wants, the director could grant it. That's correct. Judge Hurwitz. OK, thank you. And I see my time is winding down. I would I would say I'm adding time for Mr. Gallo. So we'll add a few minutes. Let me follow up on that last point. The scope of the exemption that was granted in 2015 doesn't satisfy Hill and the other plaintiffs. In this particular case, was that because the request was made in a narrower fashion? Correct. So somebody put a foothill can go to a plan to ask for a broader exemption that's faith compliant with these particular plaintiffs. And the director would consider that would grant that is what you're saying. That's correct. That she would consider all exemption requests that come before her. And then one additional question. Opposing counsel had said, given the procedural posture of this case, let's not wait for the Supreme Court. Send it back so that the parties can engage in the discovery process. Given that discovery was essentially, I think, completed in the skyline case. What additional discovery is there that would counsel us ruling quickly rather than waiting for the Supreme Court? Your Honor, the department believes that deferring submission is appropriate here. It seems like that would be the most prudent course of action for the court and the parties. And it seems like it would be consistent with the approach taken in the skyline case. It doesn't seem there would be much prejudice resulting for a deferral submission for a few months. The plaintiffs at no point in this case have ever sought a preliminary injunction. You don't see the need for discovery and development of a factual record. These are legal issues in the state's view. The state believes that this court can look at the motion to dismiss on the de novo review and that it would be fine to move forward. But agrees that waiting for the Fulton decision seems the most prudent course, particularly given that one of the questions presented is whether or not the Smith case should be revisited. And that underpins the primary claim in this case. And the director would be happy to provide supplemental briefing to the court upon issuance of the Fulton decision. It strikes me that's one reason why just sending it back to the district court and saying, well, let things proceed. Doesn't really help if unless we tell the district court it was wrong about its application of Smith. Otherwise, all we've done is say a district court, you hold on to this while we wait for Fulton rather than we'll hold on to it. But I'm still I'm still fascinated by the notion that we might just have here a failure to communicate. And so I want to find I mean, I want to I wonder whether the sides could explore whether or not a plan could ask for this exemption and whether you could grant it before the Supreme Court. Deals with Fulton. But I guess I'll leave that to the two to the two of you. Your Honor, I will note for the court that I believe it was the skyline case. Mr. Goss can correct me if I'm wrong, but we we did proceed in front of the Ninth Circuit mediation panel. And so it wasn't this case, but it was the analogous skyline. I noticed that and that's why I wasn't suggesting mediation. But now that I understand both of your positions, they want a policy that exempts abortion. You say we'd be happy to. We have the power to do that if only a plan would ask us. And so I'm trying to figure out why in the time we're waiting for the Supreme Court somehow can't or somebody can't arrange for a plan to ask you and you can grant the exemption and everybody will go home happy. But I guess that's up to the two of you and not me. Should rest. Do you have any questions? I don't. Thank you. All right. Thank you very much for your argument, counsel. Let's put four minutes on the clock for rebuttal. Thank you, Your Honor. Just a few points of rebuttal. If I could start first with this suggestion by my friend on the other side that the government hasn't denied or had the opportunity to deny an exemption that would accommodate the church's religious beliefs. I know you allege that you asked them, but now I understand their position. Their position is we don't have the power to grant your request. We but we do have the power to grant the request of a plan. And so I guess while we're only dealing with the complaint here, you don't allege that you that a plan asked them whether it could issue a plan issue coverage that excluded abortion relief to you. That's true, Your Honor. There's not a direct allegation of the health health insurer made the request. But OK, my friend, my friend's position is contradicted by the complaint as well, which alleges that there are no policies, procedures or rules. The department has adopted government. But she just said she just said. And that's why I asked her whether or not they have policies, procedure or rules. She said, oh, the director has the power to do that. If only someone would ask her to. Now that I'm so I'm not focusing for a moment on whether your complaint is right or anything else. I guess my question is, can you get a plan to ask her to do that or would you rather or would you rather litigate this case? And if you'd rather litigate it, then I guess I'm less sympathetic for the notion that we ought to rush it back to the district court to move it along. No, no, Your Honor. So a couple responses. The first is that the director in issuing those letters eliminated the religious accommodations that existed. Yeah, but that's quite different. That's quite different. In 2014, she said, I don't have I can't approve plans that don't have this in it. But in 2015, she said, I can exempt plans from the requirement. And now she's now saying her counsel is now saying, I have the plan to give you I have the power. I'm not saying she promised to give it to you. I have the power to give you precisely what you want. It is not the department's position that you can't get exemption from this position from this requirement. So I don't agree with your characterization of what the previous history shows. The previous history shows that they're willing to make exemptions when asked. They were never asked for the one that you now want by a plan. And so the question. Well, Your Honor, the only formal communication from the department is the August 2014 letter. And it's still posted on the department's Web site. But what counsel what the state's counsel said is that, look, in 2015, a plan made a request for an exemption. The scope of it was a little narrower than what you would be satisfied with in your case. And the director looked at it, exercised her discretion to grant it. So if you want an exemption, go through the same process as the plan did in 2015. The director is empowered to review that and could exercise her authority to grant it in a way that is faith compliant for your particular clients. And the director need not wait for any request from an employer or health plan or otherwise. It has the power to grant exemptions if in the public interest or for good cause. And that's for any person that says the statutory language says exemptions to any person or class of person. And so what the department should have done is when it issued the August 2014 letters to say religious employers or religious employer plans are exempt. It didn't do that. The reason it didn't get a step back from the 2014 letters. A lot is it's 2020. In 2015, it made the department made clear that if a religious employer asked for an exemption, it could be available. And they just the religious employer in that case asked for an exemption or a plan asked for an exemption less broad than the one that you want. Now, I don't know whether the department's right that the request has to come from a plan as opposed to a person. That's sort of a question of California state law. But I'm still trying to figure out. It's quite clear to me that the department is not unwilling to consider whatever request you want to make. I'm not saying you have to make one. That's a legal question. And so your position that they've already told, you know, just finds no support in the record to me. Well, they may be relying on a silly requirement that a plan asked them rather than you. But I keep hearing your opposing counsel say if someone asked us, the director has the power to grant that. And she doesn't say she wouldn't. Hasn't it been clear to you that that exemption is not going to be forthcoming? I mean, that is the whole purpose of this many years of litigation over this issue. Exactly right. It's six years now that we've been we've been pushing back on this five years of litigation. They've taken this case to this court, the Ninth Circuit Court of Appeals twice. They took a Catholic, an order of Catholic nuns to the California Court of Appeals when all they could all they could do is with a stroke of a pen, just like they did with the August letters, is they could provide for the exemption. They're the ones that injured the churches. They're the ones that caused the constitutional injury. The free exercise clause requires them to be the ones that fix it. It's not the it's not the church's obligation to undo the harm that the department caused. And I see I'm past my time. I'm happy to answer additional questions. But otherwise, there's no questions. Judge Hurwitz, Judge Bress. No, I want both sides have done a good job answering my questions. I appreciate it. All right. Thank you very much. The vote council for your arguments of the matter submitted. Thank you.
judges: Nguyen, Hurwitz, Bress